*E-filed 3/15/07*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GRACIELA ZAMORA, et al., on behalf of themselves and all other persons similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>D'ARRIGO BROTHERS COMPANY OF CALIFORNIA,<br><br>　　　　　Defendant. | Case No. C04-00047 JW (HRL)<br><br>**ORDER GRANTING PLAINTIFFS' FOURTH MOTION TO COMPEL DISCOVERY FROM DEFENDANT**<br><br>Re: Docket No. 139 |

In this sex discrimination class action, plaintiffs allege that defendant agricultural business fails to promote female field workers to the supervisory position of foreman. The subject of this order, however, is not discrimination, but rather discovery. Plaintiffs here move to compel: (1) responses to numbers 1 and 6 of their fourth request for production of documents; (2) a response to certain questions left unanswered in defendant's 30(b)(6) deposition; (3) responses to several requests for admissions, and associated interrogatory/document responses; and (4) the deposition of John D'Arrigo, the president of the defendant company. Defendant opposes the motion, and a hearing was held on March 13, 2007.

**DISCUSSION**

**A.    Request for Production of Documents**

With respect to their fourth request for production of documents, plaintiffs now seek to

compel production of documents responsive to requests 1 and 6.

**1.     Request No. 1**

This request reads: "All documents from January 1, 1998 to the present that tabulate defendant's employees by gender, race and/or national origin, including Form EEO-1 Reports submitted during this period."  In response, defendants produced no documents, objecting on grounds of overbreadth, burden, privacy rights, relevance, the statute of limitations, duplication of prior discovery requests, and vagueness and ambiguity respecting the term "tabulate."

One of defendant's objections, to this and to other discovery requests at issue in this motion, is that plaintiffs seek discovery dating back to January 1, 1998, while defendant's potential liability only dates back to July 5, 2001.  Defendant contends that information predating the class period is not relevant.  Plaintiffs cite this court's April 11, 2006 order on a different discovery motion, where production was ordered of certain employee data dating back to January 1, 1998.  Defendant argues that the April 11, 2006 order only addressed the particular discovery request before the court at the time, and should not be extended to apply to all discovery requests.  Defendant is correct that the court's earlier order only applied to requests before the court at the time; however, the same rationale applies to the current dispute.  The Ninth Circuit Court of Appeals instructs that "it is appropriate to admit pre-liability data into evidence in a disparate impact case if promotional practices remain similar over a long period of time." *Paige v. California*, 291 F.3d 1141, 1149 (9th Cir. 2002).  If information can be admissible evidence, it certainly clears the lower hurdle of relevance at the discovery stage.  Defendant's time period objection is therefore rejected.

Defendant also argues that the request for documents that tabulate employees by race and gender is "nonsensical," and that plaintiffs should rephrase this request.  However, defendant offers no rational explanation for its assertion and this court cannot think of one.  The plaintiffs' original language seems perfectly acceptable.

Finally, the court rejects defendant's suggestion that, merely because it has earlier produced "similar information," the request is cumulative.  Plaintiff's motion is GRANTED as

1 to this document request. Defendants must turn over all Form EEO-1 Reports submitted since
2 January 1, 1998, as well as all other documents responsive to this request.

### 2. Request No. 6

This request reads: "For all persons employed by defendant from January 1, 1998 to July 5, 2001, documents (including but not limited to electronic/computer generated documents and data:

    a. Name and i.d. number

    b. Gender

    c. Job title history

    d. Job grade or classification history

    e. Salary history, including weekly gross earnings during this period.

    f. Date of hire

    g. Date of termination, if applicable.

    h. Job history, including promotion, transfer, demotion, advancement or change in job classification, performance evaluations, including for each such transaction the date(s) such action was taken and a description of the action.

    i. Job application history

    j. Disciplinary history, including all warning notices, and dates thereof.

    k. Selection and/or participation in any training programs, internships, apprenticeship programs.

    l. Receipt of any certifications, special qualifications and awards."

This request mirrors one that was the subject of a discovery dispute last year, with the difference being that the earlier request pertained to people employed *after* July 5, 2001. After the court ordered production, the parties ultimately compromised in March 2006 about what would be produced in satisfaction of that request, although they continue to disagree about the implementation of the production. Plaintiffs now suggest that they would accept, in satisfaction of the current request for data about people employed *before* July 5, 2001, the same categories of information they agreed to accept with respect to those employed after July 5, 2001.

3

In its initial response to this request, defendant objected to Request No. 6 on various grounds, including that the request does not sufficiently define the documents and categories of employees to which it applies and that the request is vague and ambiguous as to the terms "documents," "gender," "job history," and "job grade or classification history." Defendant also objected on grounds of extreme overbreadth, privacy rights, excessive subparts, and violation of the compromise agreement concerning the earlier request. In their moving papers plaintiffs reject all of these objections and note that the March 2006 agreement only applied to post- July 5, 2001 employees.

In its opposition to this aspect of the motion, defendant presses three main arguments: overbreadth, violation of the compromise, and burden. The court first addresses the March 2006 compromise, and concludes that any agreement between the parties on this subject was never presented to the court, and therefore the court declines to interject itself into that aspect of the parties' dispute. As for overbreadth and burden, defendant asserts that it would require one month of manpower to retrieve this data from an outdated computer system. However, this estimate comes from defendant's counsel, not from a sworn declaration provided by a representative in a position to accurately estimate the burden. Defendant cannot convince this court to be sympathetic to its claims of burden and practical hardship when they are based on bare assertions with no competent evidence to back them up. Plaintiffs' motion is GRANTED as to this document request. Plaintiffs may, at their discretion, choose to accept only those categories of data covered by the March 2006 agreement.

**B.     Rule 30(b)(6) Deposition**

In March 2005 plaintiffs requested certain computer-readable personnel data concerning those persons who worked for defendant after July 5, 2001. The parties eventually worked out a compromise about the subcategories of personnel data that defendant would produce in satisfaction of this request. In November 2006, this court ordered defendant to produce a Rule 30(b)(6) representative to testify about the computer data, as plaintiffs had encountered obstacles in interpreting the data, including the various codes used in the data. Despite this order, defendant did not produce a deposition witness who knew all of the codes.

4

Defendant produced Rob White as its representative for this deposition. Plaintiffs were dissatisfied with Mr. White's inability to explain the codes, and plaintiffs were also unhappy to learn that a group of employees (the Brawley site employees) had apparently been excluded from the computer data. Plaintiffs now move for a sworn supplement to this Rule 30(b)(6) deposition that (1) informs plaintiffs of the meaning of all job classification codes, commodity codes, location codes, and disciplinary codes; and (2) explains the exclusion of the Brawley employees (in effect, plaintiffs seek the Brawley data).

### 1. Computer Codes

At the hearing, defendant admitted that there exists a written description of all job classification codes, commodity codes, location codes, and disciplinary codes, and lamely explained that it had not been turned over at the time of Mr. White's deposition because defendant was "not sure that was part of the deposition notice to bring along documents." However, defendant agreed to turn over a copy of these definitions promptly.

### 2. Brawley Employees

Plaintiffs bring to the court's attention the fact that information on workers employed at the Brawley worksite has been excluded from the electronic data produced pursuant to the parties' March 2006 compromise. Plaintiffs first learned about this exclusion in November 2006 at the Rule 30(b)(6) deposition.

Defendant counters that no data has been "excluded." Defendant states that it only included data pertaining to locations that are mentioned in the complaint, and that Brawley is not one of those locations. Plaintiffs reply that there is nothing in the complaint or in the court's class certification order that excludes the Brawley district.

The court rejects the semantic quibbling involved in trying to determine if the Brawley data was "excluded" or simply "not included." It is undisputed that the Brawley location is a part of defendant's operations, and this litigation concerns defendant as a whole, not individual worksites. The court finds no basis for defendant to distinguish among its locations in producing data required in discovery. Defendant must supplement its prior data production in order to provide plaintiffs with data concerning all of its worksites, whether or not they are

mentioned in the complaint. Plaintiffs' motion is GRANTED as to the sworn supplement to the Rule 30(b)(6) deposition. If necessary, plaintiffs may conduct an additional 30(b)(6) deposition.

### C. Requests for Admissions

Plaintiffs served defendant with several Requests to Admit Facts. Plaintiffs also served an Interrogatory and a Request to Produce for all documents not previously produced which provide the basis for any denial of any of the Requests to Admit. In the following pages, when this court orders defendant to admit or deny a certain request, the court also intends for defendant to respond appropriately to the accompanying interrogatory and request for production.

#### 1. Request No. 1

Plaintiffs ask defendant to admit or deny that "During the period from January 1, 1998 through January 1, 2005, defendant did not employ any women as permanent forepersons (ie., persons employed in the foreperson job for a period exceeding 30 days) with responsibilities over agricultural employees who worked for defendant." Defendant served numerous objections, none of which the court finds persuasive. First, the court has already addressed defendant's contention that discovery should be limited to the period of liability. Defendant also contends that the request calls for an expert or legal opinion, and that plaintiffs have sufficient information to be able to answer the question themselves. Neither of these contentions is valid. The worst objection, however, is defendant's assertion that it cannot respond because it chooses not to accept plaintiffs' definition of a "permanent foreperson." This is a prime example of the obfuscation that characterizes defendant's discovery responses. The court orders defendant to accurately and reasonably respond to this request, noting any necessary qualifiers. Plaintiffs' motion is GRANTED as to this request.

#### 2. Request No. 2

Plaintiffs ask defendant to admit or deny that "Prior to January 1, 1998, defendant did not employ any women as permanent forepersons (ie., persons employed in the foreperson job for a period exceeding 30 days) with responsibilities over agricultural employees who worked

for defendant." Defendant asserts the same objections to this request as it does to Request No. 1, and the court has the same opinions about those objections. Plaintiffs' motion is GRANTED as to this request.

### 3. Requests Nos. 3 - 8

In Request No. 3, plaintiffs ask defendant to admit or deny that "For each year from January 1, 1998 through December 31, 2001, the percentage of defendant's agricultural workers who were women was never less than 15% of the total agricultural workers employed by defendant." Requests 4 though 8 ask the same thing, but substitute different percentages: 20%, 25%, 30%, 35%, and 40%, respectively.

Defendant mainly objects to the term "total agricultural workers employed by defendant," contending the term is awkward and not discernable. Defendant argues that the percentages could vary depending on whether the question was calling for annual, quarterly, monthly, weekly, or daily calculations. Thus, once again defendant exploits a perceived ambiguity in plaintiffs' requests and relies on that ambiguity to wiggle its way out of any response whatsoever. The court concludes that defendant has an obligation to make a reasonable response to this request, explaining the basis for its calculations if necessary.

Defendant also objects that these requests call for expert or legal conclusions, and that plaintiffs should be able to do these calculations themselves. Given the past difficulties plaintiffs have had in accessing uncorrupted data in the possession of defendant, the court concludes that it is preferable for defendant to do the calculations. Plaintiffs' motion is GRANTED as to these requests.

### 4. Request No. 16

Plaintiffs ask defendant to admit or deny that "For the period from January 1, 1998 through the present, defendant has not acted to validate that its practices and procedures used with respect to the selection of forepersons are job-related." Plaintiffs explain that the issue of job-relatedness is at the center of many disparate impact employment discrimination cases.

Defendant responds to this request with the familiar barrage of objections based on relevance, time period, legal conclusion, etc. Defendant also contends that the phrase

7

1  "defendant has not acted to validate that its practices and procedures used with respect to the
2  selection of forepersons are job-related" is too ambiguous to be intelligible. The goal is to
3  comply with discovery obligations, not avoid them, and the court believes defendant is
4  practicing avoidance. Plaintiffs' motion is GRANTED as to this request.

### D. Deposition of John D'Arrigo

Plaintiffs seek to depose the company's president, John D'Arrigo, but the company objects that this deposition would be unreasonably burdensome and duplicative and that the plaintiffs' sole motive is harassment.

Under the liberal discovery principles of the Federal Rules of Civil Procedure, a party seeking to block a deposition must carry a "heavy burden" and make a "strong showing." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). "Courts are sometimes willing to protect high-level corporate officers from depositions when the officer has no first-hand knowledge of the facts of the case or where the officer's testimony would be repetitive." *First United Methodist Church of San Jose v. Atlantic Mutual Ins. Co.*, No. C-95-2243 DLJ, 1995 WL 566026, at *2 (N.D. Cal. Sept. 19, 1995). "However, where a corporate officer has first hand-knowledge of important, relevant, and material facts in the case the deposition should be allowed." *Id.*

Plaintiffs argue that Mr. D'Arrigo should be made available for two reasons. First, he can testify about company policy and practice relating to the advancement of female employees, as well as other personnel-related subjects. Second, he has had some direct involvement in the claim of one of the named plaintiffs. Plaintiff Zamora wrote a letter to Mr. D'Arrigo seeking a private meeting with him about her desire to become a foreperson. Although it does not appear that Mr. D'Arrigo chose to respond or further involve himself in Ms. Zamora's situation, plaintiffs argue that they should be allowed to question Mr. D'Arrigo about his understanding of the complaint and his response.

Defendant argues that other managerial employees would be better witnesses concerning personnel issues, as Mr. D'Arrigo is not involved in day-to-day decisions about promoting employees to foreperson positions. Defendant goes so far as to claim that "Mr. D'Arrigo is not

8

responsible for overseeing how company policies or practices are carried out by supervisory level employees." As for Ms. Zamora's letter, defendant insists that Mr. D'Arrigo merely forwarded the letter to his Labor Relations Manager and had no further involvement.

Both sides present rational arguments, but defendant has the burden of showing why relevant discovery should not go forward. Defendant has submitted no affidavit from Mr. D'Arrigo swearing that he has no information about company equal employment and personnel policies or that he had nothing to do with Ms. Zamora's situation. See *General Star Indemnity Co. v. Platinum Indemnity Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002) (affidavit required); *Thomas v. Int'l Business Machines*, 48 F.3d 478, 483 (10th Cir. 1995) (affidavit submitted). It is reasonable to expect that a company president would have substantial knowledge about basic company policy and practice, especially something as basic as how people get promoted. Plaintiffs are entitled to test Mr. D'Arrigo's knowledge in a deposition, rather than relying on the assertions of defendant's lawyers. See *In re Air Crash at Taipei, Taiwan*, No. MDL 1394-GAF(RCx), 2002 WL 32155478, at *4 (C.D. Cal. Nov. 6, 2002) (plaintiffs entitled to test a claim of lack of knowledge by deposing the witness). Plaintiffs' motion is GRANTED in this respect. Mr. D'Arrigo shall appear for a deposition at a time mutually convenient for the parties, no later than March 27, 2007.

**ORDER**

This motion and the three prior discovery motions in this case lead this court to conclude that defendant is more intent on dodging its discovery obligations than on complying with them. Defendant takes refuge in the claimed ambiguity of plaintiffs' discovery requests, quibbling over terminology and demonstrating little interest in reaching actual understanding. Instead of conscientiously seeking clarification, defendant has a habit of simply refusing to answer. The court rejects defendant's chronic resort to pettifogging objections.

//
//
//

9

Plaintiffs' motion is granted in its entirety. Defendants are to respond appropriately to each component of this motion by March 27, 2007, except for the written explanation of computer codes, which must be produced forthwith.

**IT IS SO ORDERED.**

Dated: March 15, 2007 /s/ Howard R. Lloyd

HOWARD R. LLOYD

UNITED STATES MAGISTRATE JUDGE

THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

James Gerard Bradtke   jgbvjd@aol.com, gikm@aol.com

Annabelle Cortez-Gonzalves   agcortez@ufwmail.com,

Geoffrey F. Gega   ggega@cookbrown.com, ksakai@cookbrown.com, jgomez@cookbrown.com, svaudreuil@cookbrown.com

Mario G. Martinez   mariomtz@ufwmail.com

Stephen G. Seliger   SSeliger1@aol.com,

Regina Silva   rsilva@cookbrown.com, ksakai@cookbrown.com

Paul Strauss   pstrauss@lawmbg.com, ldavis@lawmbg.com; slegenza@lawmbg.com

\* Counsel are responsible for providing copies of this order to co-counsel who have not registered under the Court's ECF system.

Dated: 3/15/07

                                                    /s/ JMM
                                    Chambers of Magistrate Judge Lloyd